## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK POTOCKI,** | : | |
| **Petitioner** | : | |
| **v.** | : | **CIVIL ACTION NO. 3:14-1205** |
| **WARDEN THOMAS** | : | **(JUDGE MANNION)** |
| **Respondent** | : | |

### MEMORANDUM

Derek Potocki, an inmate currently confined in the United States Penitentiary in Lewisburg, Pennsylvania, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 1). Potocki claims that his due process rights were violated during the course of a prison disciplinary hearing held on February 12, 2014, where he was found guilty of the prohibited act of Assault. Id. Specifically, he challenges the sufficiency of the evidence used to find him guilty. Id. Potocki requests that his incident report be reversed and expunged from his record. Id. The petition is ripe for disposition and, for the reasons set forth below, will be denied.

**Background**

On January 23, 2014, Potocki was served with Incident Report No. 25407108 charging him with "Assaulting any person," a Code 224 violation. (Doc. 7, Ex. 1, Att. B). The incident report, written by C. Adams, S.O.S., states:

> On January 24, 2014 at approximately 1:20 pm this officer escorted I/m Potocki #09803-049 back to cell 117 from I/m Potocki's DHO hearing. I/m Potocki was visibly upset concerning his DHO hearing. I/m Potocki was then secured in cell 117 by this officer. This officer then removed the hand restraints from I/m Potocki and secured the food slot to cell 117. After securing the food slot to cell 117, I/m Potocki threw an unknown brown liquid under the cell door which struck this officer on both his pant legs and boots.

Id. The incident was referred to the Federal Bureau of Investigation for charges, but the agency declined to file charges in lieu of prison disciplinary sanctions. Id.

On January 24, 2014, Potocki appeared before the Unit Discipline Committee ("UDC"). (Doc. 7, Ex. 1, Att. B). There, Potocki was informed of his rights, and acknowledged that he understood those rights. Id. He stated that "[t]he door was closed the food tray was closed. I threw a glass of water at the wall and it went under the door. Review the camera. I want the present staff as a witness." Id. The UDC referred the charge to the

2

Discipline Hearing Officer ("DHO"). Id. Upon conclusion of the UDC hearing, a staff member provided Potocki with a copy of the "Inmate Rights at Discipline Hearing" form and a "Notice of Discipline Hearing Before the DHO" form. Id. Potocki refused to sign the forms. Id. The staff member informed Potocki of his right to have a staff representative, call witnesses, or present evidence before the DHO. Id. Potocki stated that he wished to be represented by Lieutenant Wagner, and he wished to call Officer Heater to testify as a witness. Id.

The DHO attempted to conduct a hearing on February 5, 2014, at which time Potocki informed the DHO for the first time that he wished to have his staff representative view the video footage of the incident. Id. Potocki also introduced three handwritten statements. Id. In the first statement, Potocki wrote "I threw water at the wall in my cell, not at the officer" and asserted that "this was no assault or attempted assault." Id. He asserted that the liquid he threw leaked under the door, and did not strike the officer. Id. In the second and third letters, Potocki asserted that the liquid he threw was clear, not brown as the officer stated.[1] Id.

---

[1]Despite iterating several times that the liquid was clear, not brown, in his habeas petition Potocki admits that the liquid he threw was in fact coffee. (Doc. 1).

On February 12, 2014, Potocki appeared for a hearing before the DHO and acknowledged that his staff representative, Mr. Ilgen, had viewed the video footage as requested.[2] Id. At the hearing, Potocki stated:

> I did not intentionally assault the officer. I was upset after my DHO hearing and threw water at the wall in the cell. There's no way any of it went under the door and hit that officer. It's all lies. They're making it all up. This is misconduct, classification I. Somebody's going to pay for this.

Id. Potocki had requested officer Heater's testimony at the DHO hearing. Id. However, Officer Heater was employed at a different facility, and therefore was not called to testify. Id. Instead, after verifying its accuracy, a memorandum written by Officer Heater on January 23, 2014 was read aloud at the hearing. Id.

The DHO reviewed the video footage of the incident, and noted the following timeline:

> 1:30:03 PM The reporting officer is observed escorting inmate Potocki to his cell door.
>
> 1:30:16 PM The reporting officer unlocks the cell door. Inmate Potocki steps inside the cell, and the reporting officer secures (locks) the cell door. The reporting officer is

---

[2] Potocki had requested Lieutenant Wagner as his staff representative. (Doc. 7, Ex. 1, Att. B). However, Lieutenant Wagner served at a different penitentiary, and therefore was not available. Id. As a result, Mr. Ilgen was appointed as a staff representative in Lieutenant Wagner's stead. Id.

4

observed speaking through the cell door to inmate Potocki.

1:30:45 PM The reporting officer unlocks the handcuff port/food slot door in the center of the cell door in order to remove Potocki's hand restraints. Inmate Potocki does not place his hand out of the handcuff port/food slot to have his hand restraints removed. The reporting officer remains at the cell door, speaking with inmate Potocki.

1:31:19 PM The reporting officer abruptly steps back from the cell door with his left leg, and looks down toward his lower legs and feet and the range floor.

1:31:23 PM Inmate Potocki's hands emerge through the handcuff port/food slot. The reporting officer removes Potocki's hand restraints.

1:31:35 PM The reporting officer secures (locks) the handcuff port/food slot door in the center of the cell door.

1:32:07 PM After double checking to make sure the handcuff port/food slot door and the cell door itself are locked, the reporting officer pauses and again looks down toward his left leg and foot prior to departing the cell front.

Id. Potocki's staff representative, Mr. Ilgen, agreed with the DHO's description of the video footage. Id.

At the conclusion of the DHO hearing, Potocki stated "[h]old on a minute, what about my witnesses, you didn't call my witnesses." Id. The DHO reminded Potocki that the only witness he had called was Officer Heater; Potocki replied "I never asked for him as a witness. I want my inmate witnesses." Id. The DHO informed Potocki that he had three prior

opportunities to call witnesses, and that the hearing had concluded. Id. Additionally, the video footage revealed that "there were absolutely no inmates outside the cell door at the time the incident occurred, therefore no inmate witnesses could state with any degree of certainty whether the reporting officer was struck with the liquid Potocki admitted to throwing." Id. Therefore, the DHO refused to entertain Potocki's request to call additional witnesses. Id.

The documentary evidence that the DHO considered in making his determination included: (1) the incident report, written by Officer Adams, (2) the Memorandum from Officer Heater, dated January 23, 2014, corroborating the report by Officer Adams, (3) the video footage of the incident, and (4) the written statements and verbal testimony of Potocki. Id. The DHO concluded that Potocki had committed the prohibited act of Assault, Code 224. Id. The DHO specifically noted that:

> The DHO gives the greater weight of the evidence in this case to the eyewitness written account of the reporting officer, the memorandum of Heater, dated 1-23-2014, the video footage of the incident, recorded by the video camera surveillance system, which depicts at 1:31:19 PM, the reporting officer abruptly steps back from the cell door with his left leg, and look down toward his lower legs and feet and the range floor, as well as the testimony of inmate Potocki, in which he admitted 'I threw water at the wall in my cell, not at the officer.' The cup had water in it, not a

6

brown liquid. It hit the wall inside his cell and leaked under the door.' This evidence indicates on 1-23-2014 at 1:20 pm, at USP Allenwood, the reporting officer escorted inmate Potocki, #09803-049, back to cell 117 from inmate Potocki's DHO hearing. Inmate Potocki was visibly upset concerning his DHO hearing. Inmate Potocki was then secured in cell 117 by the reporting officer. The reporting officer then removed the hand restraints from inmate Potocki and secured the food slot to cell 117. After securing the foot slot to cell 117, inmate Potocki threw an unknown brown liquid under the cell door which struck the reporting officer on both his pant legs and boots.

The DHO has considered as evidence in this case the hand written statements and verbal testimony of inmate Potocki, in which he contends he did not assault, or attempt to assault the reporting officer in this case. The DHO gives less credibility, and therefore lesser weight, to this evidence than that to which the greater weight is given in this case, for the following reasons. First, Potocki readily admits 'I threw water at the wall in my cell, not at the officer.' The cup had water in it, not a brown liquid. It hit the wall inside the cell and leaked under the door.' Therefore, Potocki did throw some sort of liquid at, or in the vicinity of the door to his cell because he was upset following a DHO hearing. Potocki was also clearly aware the reporting officer was standing immediately outside the cell door at the time, as the reporting officer is observed on the video footage of the incident speaking to Potocki, who is inside the cell. Moreover, despite his contentions that none of the liquid struck the reporting officer, the video footage clearly corroborates the written account of the reporting officer, as well as that of Officer Heater, that the liquid thrown by Potocki he [sic] did strike the reporting officer in the legs and feet, based on the reporting officer's reaction 1:31:19 PM, when the reporting officer abruptly steps back from the cell door with his left leg, and looks down toward his lower legs and feet and the range floor, as well as the fact that at

1:32:07 PM, after double checking to make sure the handcuff port/food slot door and the cell door itself are locked, the reporting officer pauses and again looks down toward his left leg and foot prior to departing the cell front, lending great credibility to the report he was struck by whatever the liquid substance was Potocki threw in the vicinity of his cell door. Assault is defined as the unconsented to touching or striking of one person by another, or by an object put in motion by the assailant, in this case, some sort of liquid substance put in motion by Potocki which struck the reporting officer. Therefore, whether the liquid was brown or clear doesn't change the offense elements in this case. The fact is the liquid was propelled by Potocki, and the video footage supports the reporting officer's and Officer's [sic] Heaters reports that the reporting officer was, in fact struck with the liquid.

The greater weight of the evidence in this case, therefore, supports the finding inmate Potocki committed the prohibited act of Assault, Code 224.

Id. The DHO sanctioned Potocki to disallowance of twenty-seven days good conduct time; forfeiture of fifteen days non-vested good conduct time; sixty days disciplinary segregation; one hundred eighty days loss of commissary privileges; one hundred eighty days loss of visiting privileges; one hundred eighty day loss of telephone privileges; and sixty days loss of mattress. Id. The DHO documented his reasons for imposing the sanctions:

Assault on others in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case,

8

therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct.  Disallowed and Forfeited Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Potocki's period of incarceration. Forfeited Non-Vested Good Conduct Time is imposed based on the nature of the incident, which involved Potocki's assault of a Federal Bureau of Prisons correctional officer. Loss of commissary, telephone and visiting privileges is imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Loss of each of these privileges for a protracted period of time is warranted, and again, based on the nature of the incident, involving an assault on a staff member. Finally, the loss of mattress is imposed as a sanction, again, based on the nature of the incident, involving Potocki's assault of a Federal Bureau of Prisons correctional officer.

Id. At the conclusion of the hearing, Potocki was advised of his right to appeal. Id.

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (citing Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999)). Protected liberty interests exist in disciplinary proceedings where an inmate loses good conduct time. Wolff

v. McDonnell, 418 U.S. 539, 556 (1974). However, "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Id.

### A.   Exhaustion of Remedies

Respondent argues that Potocki's petition should be dismissed because he failed to exhaust his administrative remedies. (Doc. 7). Where a prisoner files a petition for writ of habeas corpus under 28 U.S.C. §2241, the United States Court of Appeals for the Third Circuit has "consistently applied an exhaustion requirement[.]" Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citing Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986); Arias v. U.S. Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981)). If a petitioner fails to exhaust administrative remedies, the district court must dismiss the petition. See, Callwood, 230 F.3d at 634.

The rules governing appeals for federal inmates are contained in 28 C.F.R. §542,10, et seq. These rules require that a prisoner first submit a DHO appeal "to the Regional Director for the region where the inmate is currently located." 28 C.F.R. §542.14(d)(2). If the inmate is not satisfied with the response from the Regional Director, he or she may submit an

10

appeal to the General Counsel within thirty days. 28 C.F.R. §542.15(a). The General Counsel has forty days to reply.[3] 28 C.F.R. §542.18. Appeal to the General Counsel is the final step in the administrative appeal process. 28 C.F.R. §542.14(a).

Here, Potocki filed an appeal to the Regional Office on March 17, 2014. (Doc. 7, Ex. 1, Att. E). The appeal to the Regional Office was denied on April 16, 2014. Id. Thereafter, on May 7, 2014, the General Counsel received Potocki's appeal. (Doc. 1). Consequently, the General Counsel had until June 16, 2014 to reply to Potocki's appeal, or provide written notice of the twenty day extension. 28 C.F.R. §542.18. Attached to Potocki's petition is a letter from the General Counsel, dated June 17, 2014, acknowledging receipt of his appeal. (Doc. 1).

While Respondent argues that he had until July 6, 2014 to provide a response, there is no indication in the record that he elected to extended the response time by an additional twenty days, and there is no indication that any notice was mailed to Potocki informing him of this election. Rather, Potocki has produced the General Counsel's receipt of

---

[3] The General Counsel may exercise a twenty day extension if the forty day time limit is insufficient to make an appropriate decision. 28 C.F.R. §542.18. The General Counsel must inform the inmate of the extension in writing. Id.

his appeal, dated June 17, 2014, one day after General Counsel was required to provide a response to the appeal. (Doc. 1). This indicates that the General Counsel did not properly exercise the twenty day extension prior to June 16, 2014. Consequently, the General Counsel's response time elapsed on June 16, 2014 and Potocki's habeas petition was filed after all administrative remedies were exhausted.

## B.    Procedural Rights

Where an inmate is subjected to a disciplinary hearing in which he or she loses good time credit, the following minimum procedural due process rights must be afforded to a prisoner: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his or her defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 at 563-67.

Here, it is apparent from the record that Potocki was afforded his

12

required procedural rights. He received timely notice of the incident report. (Doc. 7, Ex. 1, Att. B). He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, and have a staff representative. Id. Potocki was provided with three opportunities to call witnesses, and chose to call Officer Heater. Id. Although Officer Heater was not able to testify at the hearing, he did submit a written statement that was read aloud to Potocki during the hearing. Id. This was sufficient to satisfy the hearing requirements. See, Wolff, 418 U.S. at 567-68 (confrontation and cross-examination of witnesses is not required in prison disciplinary hearings).

After the hearing was completed, Potocki for the first time requested additional witnesses. (Doc. 7, Ex. 1, Att. B). The DHO denied Potocki's request, reasoning, inter alia, that "there were absolutely no inmates outside the cell door at the time the incident occurred[.]" Id. Thus, any testimony offered by other inmates would not reveal any new details about the incident, and would be irrelevant. Id. Therefore, the DHO properly excluded such testimony. Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007) ("it is not a denial of due process to deny an inmate an opportunity to present witnesses whose testimony would be irrelevant, repetitive, or unnecessary") (internal quotations omitted). Additionally,

Potocki received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. (Doc. 7, Ex. 1, Att. B). He was also notified of his right to appeal. Id. Consequently, Potocki's procedural rights were not violated.

### C.    Sufficiency of the Evidence

Potocki primarily challenges the sufficiency of the evidence relied upon by the DHO in reaching his conclusion. (Doc. 1). When a petitioner challenges the sufficiency of the evidence used in the disciplinary hearing, the district court must affirm the finding if there is "some evidence in the record" that supports the finding. Superintendent v. Hill, 472 U.S. 445, 455-57 (1985). The standard is not an exacting one, and the district court is limited to determining if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

While the evidence presented to the DHO in this instance is by no means overwhelming, the record reveals at least "some evidence" supporting the DHO's findings and conclusion. Specifically, the DHO relied upon the written report of Officer Adams, the memorandum of Officer Heater, video footage of the incident, and Potocki's own written and verbal statements. (Doc. 7, Ex.1, Att. B). The DHO discussed

14

Potocki's claim of innocence, but gave lesser weight to that claim for two reasons. Id. First, the DHO found it compelling that Potocki "readily admit[ted]" to throwing "some sort of liquid at, or in the vicinity of the door to his cell" and was "clearly aware" that Officer Adams was standing immediately outside the cell door at the time. Id. Thus, the DHO found that Potocki's own statements confirmed the statements offered by Officers Adams and Heater. Id.

Second, the DHO noted that video footage showed Officer Adams "abruptly step[ping] back from the cell door with his left leg, and look[ing] down toward his lower legs and feet and the range floor[.]" Id. Later, after ensuring that Potocki's cell door was secured, Officer Adams paused "and again look[ed] down toward his left leg and foot prior to departing the cell front[.]" Id. The DHO found that this footage "clearly corroborated" Officer Adams' account of the incident. Id. The evidence cited to by the DHO "could support the conclusion" reached, and therefore the Court must affirm the DHO's findings. Hill, 472 U.S. at 455-57.

## D.    Sanctions Imposed

Finally, all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3(b). Petitioner was found guilty of a 200-level, high

severity prohibited act. (Doc. 7, Ex. 1, Att. B). Pursuant to that regulation,

the following are some of the sanctions available for 200 level offenses:

> B. Forfeiture of non-vested good conduct time up to 50% or up to
> 60 days, whichever is less;
>
> B.1. Disallowance of good conduct time, ordinarily between 25%
> and 50% (14-27 days);
>
> C. Disciplinary segregation (up to 6 months); and,
>
> F. Loss of privileges.

28 C.F.R. §541.3(b). Thus, the sanctions imposed by the DHO in the

present case, including the disallowance of twenty-seven days of good

conduct time and the forfeiture of fifteen days of non-vested good-conduct

time, were consistent with the severity level of the prohibited act, and were

within the maximum available.


**Conclusion**

A review of the record reveals that the Potocki's due process rights

were not violated, and the decision of the DHO is supported by some

evidence. Consequently, Potocki's petition for writ of habeas corpus will

be denied.

An appropriate Order will be entered.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: December 23, 2014
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1205-01.wpd

17